UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| ERIC JAMES COON,<br><br>                 Plaintiff,<br><br>    vs.<br><br>DR. MARY CARPENTER, In her<br>individual capacity,<br><br>                Defendant. | 4:14-CV-04165-KES<br><br>ORDER ADOPTING IN PART AND<br>REJECTING IN PART THE REPORT<br>AND RECOMMENDATION,<br>GRANTING IN PART AND DENYING<br>IN PART MOTION FOR SUMMARY<br>JUDGMENT, GRANTING AND<br>DENYING OBJECTIONS, AND<br>GRANTING MOTION TO<br>APPOINT COUNSEL |

Plaintiff, Eric James Coon, an inmate at the South Dakota State Penitentiary, filed a complaint under 42 U.S.C. § 1983 on November 5, 2014. Docket 1. The matter was referred for a report and recommendation to Magistrate Judge Veronica L. Duffy pursuant to 28 U.S.C. § 636(b)(1)(B) and this court's October 16, 2014 standing order. Defendant, Dr. Carpenter, moves for summary judgment. Docket 32. Magistrate Judge Duffy recommends this motion be granted in part and denied in part. Docket 46. Coon and Dr. Carpenter object to the report and recommendation. Docket 48; Docket 50. For the following reasons, the report and recommendation is adopted in part, Dr. Carpenter's and Coon's objections are overruled, Dr. Carpenter's motion for summary judgment is granted in part and denied in part, and Coon's motion to appoint counsel is granted.

## FACTUAL BACKGROUND

Dr. Carpenter is employed by the South Dakota Department of Health as the Medical Director for Corrections Health. Docket 35 at ¶ 6. When making decisions regarding requests for treatment, Dr. Carpenter relies on the contents of medical reports from the inmate's medical providers. *Id.* at ¶ 8. Coon is incarcerated in the South Dakota State Penitentiary. Docket 1. In early 2011, Coon injured his knee while running. Docket 40 at ¶ 2.

In February 2011, Coon's knee was x-rayed. Docket 40-1 at 9. The x-ray "show[ed] degenerative changes in the L[eft] knee consistent with arthritis." *Id.* On June 20, 2011, a request was submitted for orthotics for Coon. *Id.* at 2. This was denied. *Id.* In July 2011, Coon went to health services to ask about his request. Docket 40-2 at 2. He told health services that he was doing stretches, exercises, and taking NSAIDs. *Id.*

Coon filled out a KITE request slip on August 26, 2011 complaining about his knee problem and saying he used sleeves, braces, x-rays, and medications, but also requesting an MRI. Docket 40-1 at 6. On September 6, 2011, Coon complained of knee pain to prison health services. Docket 35-1. He said his pain was not relieved by meds or orthotics. *Id.* At the follow-up examination, Coon requested an MRI "to evaluate any further damage." Docket 40-1 at 9. Certified Nurse Practitioner (CNP) Ryan Manson explained to Coon that other treatments must be tried before an MRI would be authorized. *Id.*

2

Manson scheduled a knee injection. *Id.* The next week, Coon received a therapeutic injection. Docket 35-3.

A second x-ray on November 23, 2011 revealed that there was "no change in mild degenerative changes" in the knee. Docket 34 at ¶ 13; Docket 35-4. After the x-ray, Coon's knee pain continued. Docket 40-1 at 15. On December 5, 2011, Coon complained to Correctional Health Services of an ongoing knee issue, and he reported that he had injured the knee three weeks ago. Docket 40-1 at 16. During the exam, he said the therapeutic injection helped. *Id.*

On January 12, 2012, Coon filed an informal resolution request. Docket 40-2 at 4.  He complained to health services about his knee for what he claimed to be the tenth time in the last four months. Docket 40-2 at 4.  He said he received a shot last month, but his relief "didn't last long." Docket 40-2 at 4.

On January 31, 2012, Coon was seen by CNP Manson to follow-up on his complaints of knee pain. Docket 35-5. Coon claimed to have had knee pain for over a year. *Id.* He said that Lodine, his pain medication, and a knee sleeve were not relieving his pain, but that the injection helped "quite a bit." *Id.* CNP Manson requested that Dr. Carpenter authorize an MRI. *Id.* On February 9, 2012, Dr. Carpenter recommended another injection instead of an MRI. Docket 35-6. In a follow-up exam after this injection, Coon told Manson that the pain in his joint had decreased, but the pain behind the left knee continued.  Docket 35-8.

3

Coon's knee was x-rayed again on November 7, 2012. Docket 40-1 at 14. A "Radiology Correspondence" afterwards stated that while the x-ray showed degenerative changes, there were no *new* changes. Docket 40-2 at 16. Coon was also told to continue with his current treatment. *Id.*

On November 20, 2012, Coon was seen by CNP Manson to follow-up with his complaints of knee pain. Docket 35-9. Coon explained that neither the two injections nor the Lodine helped his pain significantly. *Id.* CNP Manson noted that Coon had tried numerous treatments. *Id.* CNP Manson requested a single physical therapy visit, which was approved on December 11, 2012. *Id*; Docket 35-10. At the beginning of 2013, Coon appears to have been doing physical therapy exercises in his cell. Docket 40-2 at 2; Docket 40-3 at 3.

Coon was next seen on June 20, 2013. Docket 35-13. He again complained about knee pain and stated that he had been doing physical therapy exercises. *Id.* On November 5, 2013, he was seen again for his knee pain. Docket 35-15. In his report, CNP Manson stated that Coon had received multiple injections, taken a number of NSAIDs, used a knee sleeve, and performed routine physical therapy for a year without experiencing significant relief. *Id.* CNP Manson submitted another request to Dr. Carpenter for an MRI. *Id.* This was declined as "non-emergent" by Dr. Carpenter. Docket 35-16.

On January 2, 2014, Coon complained to prison medical staff about a new symptom: pain shooting down his heel. Docket 35-17. The report again mentioned that Coon was given injections, had taken medications, and had

been performing routine physical therapy for a year without significant relief. *Id.* In February, Dr. Regier agreed that Coon should have an MRI completed, Docket 35-18, and submitted a request for an MRI. Docket 35-19. This request was approved. *Id.*

On February 21, 2014, an MRI was performed on Coon at Avera McKennan Hospital & University Health Center. Docket 35-20.  The MRI found "a complex tear of the lateral meniscus body with significant volume loss," "marginal osteophyte formation," "some cist formation," "cartilage thinning with full-thickness fissuring and subchondral osteophyte formation," "complete avulsion of the posterior root of the medial meniscus," "marginal osteophyte formation and edema," "[n]ear full-thickness mesial aspect of medial femoral condylar cartilage defect," "[f]issuring on both sides [of] the joint," "joint effusion," a "[m]oderate-sized Bakers cyst," and an extruded meniscus. Docket 40-4 at 15-16.

On March 11, 2014, Dr. Regier requested an orthopedic consultation. Docket 35-21. Dr. Carpenter declined, stating on the form, "chronic condition – recommend [physical therapy] to see if strengthening improves symptoms[.]" *Id.* In her affidavit, Dr. Carpenter claims she made this decision because she believed physical therapy may have improved Coon's symptoms. Docket 35 at ¶ 37. She also believed that the orthopedic physician examining Coon would want the knee muscles to be as strong as possible before considering surgical options. *Id.* Coon was approved to undergo physical therapy. Docket 35-22.

5

Coon was evaluated by physical therapist Drew Schelhaas on April 17, 2014. Docket 40-4 at 22. The evaluation states that Coon had been doing exercises provided by the clinic. *Id.* It also states that Coon's pain and his instability problems should benefit from physical therapy, and, in Schelhaas' professional opinion, Coon "would require skilled physical therapy to work on the pain and decreased control in his left knee." *Id.* at 24. On April 22, 2014 Schelhaas recommended that Coon would benefit from a consultation with an orthopedic surgeon. *Id.* at 26.

On May 7, 2014, Coon had another follow-up with prison medical staff for his knee pain. Docket 35-24. He complained that his symptoms were increasing and that he was in constant pain. *Id.* The report states that Coon "had physical therapy on a home basis for the past two years but has had more intense therapy recently following a physical therapy consult." *Id.* It also states Schelhaas "did not feel there was any significant change or benefit from therapy and . . . advise[d] consideration be given to orthopedic consultation." *Id.* Dr. Regier resubmitted the request for an orthopedic consultation. Docket 35-25. This was approved by Dr. Carpenter on May 8, 2014. *Id.*

Coon was seen by Dr. Peterson at CORE orthopedics on May 20, 2014. Docket 35-26. Dr. Peterson discussed both operative and non-operative options with Coon. *Id.* at 1. Dr. Peterson's report states, "I have recommended arthroscopic surgery for the left knee. . . . I cannot make his knee completely better, but I can improve his symptoms. He will need total knee replacement

6

some day [sic], but hopefully that is over 10 years out." *Id.* at 2. Dr. Regier requested approval for surgery on June 5, 2014. Docket 35-27. Dr. Carpenter approved the surgery request the same day. *Id.* Coon received knee surgery at Avera McKennan hospital on July 11, 2014. Docket 35-28.

After his surgery, Coon performed physical therapy to strengthen his knee. Docket 35-38. His physical therapist commented that Coon was placing weight on his left leg at first but was told not to. *Id.* He also performed physical therapy outside of the doctor's office. *Id.* He had numerous medical follow-ups to check on his progress. Docket 35-29; Docket 35-30; Docket 35-31; Docket 35-32. No request from medical staff was refused by Dr. Carpenter post-surgery.

On January 1, 2015, Dr. Regier requested approval for another MRI of Coon's knee. Docket 35-35. The request was approved, and the MRI was conducted. Dr. Peterson reviewed the MRI and wrote this in his report,

> Unfortunately, the degenerative changes appear to be advancing. He is not a candidate for any sort of arthroscopic treatment at this point in time. It does not appear that he healed his meniscus repair. He just had too much degenerative change to begin with and I am uncertain about his level of compliance postoperatively. I do not recommend any sort of surgical treatment right now. He will need medical treatment for osteoarthritis. I anticipate in the five to ten year mark he will probably require total knee replacement.

Docket 35-37.

On November 5, 2014, Coon filed this lawsuit against Dr. Carpenter. Docket 1. In his complaint, Coon alleges that Dr. Carpenter's refusal to authorize an MRI sooner in the treatment of his left knee damaged his knee

7

further and caused him unnecessary pain. *Id.* He repeats these assertions in his affidavit in resistance to Dr. Carpenter's motion, including an allegation that Dr. Carpenter's delay in treatment has necessitated a total knee replacement in his future. Docket 40-9 at 4. He alleges Dr. Carpenter's conduct constituted deliberate indifference to his serious medical needs in violation of his rights under the Eighth and Fourteenth Amendments to the United States Constitution.

Dr. Carpenter moves for summary judgment, arguing she is entitled to qualified immunity for Coon's claim. Docket 32. She argues Coon did not state a constitutional violation, and, in the alternative, the constitutional violation was not clearly established. *Id.*

On October 7, 2015, Magistrate Judge Duffy issued a report and recommendation. Docket 46. Magistrate Judge Duffy recommends that Dr. Carpenter be granted qualified immunity for Coon's claims except the period between February 21, 2014 and May 8, 2014. *Id.* Magistrate Judge Duffy found that before this time Dr. Carpenter and prison staff provided adequate medical care, even if they did not give Coon the MRI he sought. *Id.* But Magistrate Judge Duffy found that after the first MRI was performed on February 21, 2014, the significant damage in Coon's knee was clear enough that even a layperson would recognize he needed an orthopedic consultation. *Id.* at 25. Dr. Carpenter denied this request and instead ordered more physical

therapy, a decision Magistrate Judge Duffy found amounted to deliberate indifference. *Id.* at 26.

Both Dr. Carpenter and Coon object to this recommendation. Dr. Carpenter objects to that portion of the recommendation that denies her qualified immunity between February 21 and May 8, 2014, arguing that Magistrate Judge Duffy failed to give adequate consideration to the reasonable exercise of her professional medical judgment. Docket 48. Dr. Carpenter argues that she recognized a doctor's care was needed and provided adequate care herself. *Id.* at 3. She argues that the physical therapy she ordered after the second MRI was not a continuation of treatment but an escalation of treatment in response to the worsening of Coon's symptoms. *Id.* at 4-6.  This, Dr. Carpenter argues, was a product of her medical expertise and judgment. *Id.* at 7. She further argues that deliberate indifference cannot be legally found when pain and discomfort is the only effect of defendant's actions. *Id.* at 8. Dr. Carpenter also argues that the court should not appoint an expert to assist Coon.

Coon objects to Magistrate Judge Duffy's recommendations, arguing that Dr. Carpenter was deliberately indifferent for the entire time he sought treatment from early 2011 until the present. Docket 50. He argues that his injury is the result of Dr. Carpenter's failure to treat him properly, and objects to Magistrate Judge Duffy's narrowing of the time period of liability. *Id.* at 2-3.

9

He also argues that Dr. Carpenter's earlier denial of the MRI requests, contrary to her staff's recommendations, show deliberate indifference. *Id.* at 3.

## LEGAL STANDARD

Review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure. Pursuant to 28 U.S.C. § 636(b)(1), the court reviews de novo any objections that are timely made and specific. *See* Fed. R. Civ. P. 72(b) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to").

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The court must view the facts, and inferences from those facts, in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)); *Helton v. Southland Racing Corp.*, 600 F.3d 954, 957 (8th Cir. 2010) (per curiam). Summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Stuart C. Irby Co. v. Tipton*, 796 F.3d 918, 922 (8th Cir. 2015).

The burden is placed on the moving party to establish both the absence of any genuine issue of material fact and that it is entitled to judgment as a

matter of law. Fed. R. Civ. P. 56(a). Once the movant has met its burden, the nonmoving party may not simply rest on the allegations in the pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *Anderson*, 477 U.S. at 256; Fed. R. Civ. P. 56(e).

The underlying substantive law identifies the facts that are "material" for purposes of a motion for summary judgment. *Anderson*, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citing 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Fed. Practice & Procedure § 2725, at 93–95 (3d ed. 1983)). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247–48.

Essentially, the availability of summary judgment turns on whether a proper jury question is presented: "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250. Though pro se litigants such as Coon are entitled to a liberal

11

construction of their pleadings, Rule 56 remains equally applicable to them. *Quam v. Minnehaha Co. Jail*, 821 F.2d 522, 522 (8th Cir. 1987).

## DISCUSSION

Coon claims that Dr. Carpenter was deliberately indifferent to his serious medical need, i.e. treatment for his knee.[1] Dr. Carpenter claims that she is entitled to qualified immunity for all of her treatment decisions.

## I.    **Qualified Immunity**

In order to show a prima facie case under 42 U.S.C. § 1983, Coon must show "(1) that [Dr. Carpenter] acted under color of state law and (2) that the alleged wrongful conduct deprived [him] of a constitutionally protected federal right." *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010) (quoting *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009)). Qualified immunity protects government officials from civil suit if their conduct " 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is immunity from suit, not merely a defense to liability at trial.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity is appropriate, two factors must be determined: (1) whether the official's conduct violated a constitutional

---

[1] In letters to the court, Coon claims that he is being retaliated against for this lawsuit and that he is currently being denied medical treatment. Docket 49, Docket 51. These claims are not before the court. In order to raise these claims, Coon must amend his complaint or file a new lawsuit.

right and (2) whether that constitutional right was "clearly established" when the incident occurred. *Stoner v. Watlingten*, 735 F.3d 799, 803 (8th Cir. 2013) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. at 242 (holding courts are permitted to decide which prong of the *Saucier* qualified immunity analysis should be addressed first)). If the court finds that one of the two elements is not met, the court need not decide the other element. *Pearson*, 555 U.S. at 236. Defendant is entitled to qualified immunity if the answer to either of the prongs is "no."

" 'Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law.' " *Story v. Foote*, 782 F.3d 968, 970 (8th Cir. 2015) (quoting *Stanton v. Sims*, ___ U.S. ___, 134 S. Ct. 3, 5 (2013). A case "directly on point" is not required "before concluding that the law is clearly established, 'but existing precedent must have placed the statutory or constitutional question beyond debate.' " *Stanton*, 134 S. Ct. at 5. " 'Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.' " *Scott v. Baldwin*, 720 F.3d 1034, 1036 (8th Cir. 2013) (quoting *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004).

The Supreme Court has stated that if the defendant pleads the qualified immunity defense, "the district court should resolve that threshold question before permitting discovery." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (citing *Harlow*, 457 U.S. at 818). Only if the plaintiff's claims survive a

dispositive motion on the issue of qualified immunity will the plaintiff "be entitled to some discovery." *Id.* Even then, the Court has pointed out that Fed. R. Civ. P. 26 "vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Id.*

## II. Deliberate Indifference

Coon claims that Dr. Carpenter's deliberate indifference to his serious medical need violated his constitutional rights under the Eighth amendment.

> It is well established that "[d]eliberate indifference to a prisoner's serious medical needs is cruel and unusual punishment in violation of the Eighth Amendment." "To show deliberate indifference, plaintiffs must prove an objectively serious medical need and that prison officials knew of the need but deliberately disregarded it. . . ." [A] total deprivation of care is not a necessary condition for finding a constitutional violation: "Grossly incompetent or inadequate care can [also] constitute deliberate indifference, as can a doctor's decision to take an easier and less efficacious course of treatment." To state a claim based on "inadequate medical treatment ... [t]he plaintiff 'must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.' "

*Langford v. Norris*, 614 F.3d 445, 459-60 (8th Cir. 2010) (citations omitted).

### A. Coon Demonstrates an Objectively Serious Medical Need

Dr. Carpenter objects to the report and recommendation, arguing that Coon failed to state a deliberate indifference claim because he claims pain and discomfort were the sole effect of a delay in his treatment. Docket 48 at 8 (citing *Williams v. Dep't of Corr.*, 208 F.3d 681, 682 (8th Cir. 2000)). But in *Williams*, the alleged claims were for disability discrimination, excessive force, temporary denial of skin medication, and exposure to smoke in the van during

14

transfer to the prison. *Id.* And the lack of medication during the transfer was for a period of less than eleven hours. The present case involves a claim of pain arising from deliberate indifference to a serious medical need for years. As a result, *Williams* does not apply.

Dr. Carpenter also argues that Coon failed to raise a genuine issue of material fact as to whether the delay in treatment had a detrimental effect. *Id.* at 8-9. This is not true. Dr. Peterson's review of his February 2015 MRI states that Coon's meniscus repair was not healed by surgery partially because he had "too much degenerative change to begin with . . . ." Docket 35-37. A question of fact exists as to whether Coon's current medical condition is due to Dr. Carpenter's actions. This objection is overruled.

### B.   Dr. Carpenter Knew of and Disregarded Coon's Medical Need

Both Dr. Carpenter and Coon object to Magistrate Judge Duffy's finding that Dr. Carpenter was deliberately indifferent to Coon's medical needs between February 21, 2014 and May 8, 2014.

To show that Dr. Carpenter provided inadequate medical care, Coon " 'must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.' " *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (quoting *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995)). Coon "can show deliberate indifference in the level of care provided in different ways, including showing grossly incompetent or

inadequate care . . . ." *Allard v. Baldwin*, 779 F.3d 768 (8th Cir.) *cert. denied*, 136 S. Ct. 211 (2015) (citing *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)). "An official who acts reasonably, though through hindsight is found to have acted incorrectly, has not violated the Eighth Amendment. . . . '[I]nmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment.' " *Hines v. Anderson*, 547 F.3d 915, 920 (8th Cir. 2008) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).

Coon objects to Magistrate Judge Duffy's recommendation that the decision to deny him an MRI from the time he was injured until January 2012 did not constitute deliberate indifference. Coon was injured in early 2011. Docket 40 at ¶ 2. He alleges that he sought an MRI from that time until an MRI was performed on February 21, 2014. Docket 40-9 at 1; Docket 35-20. The health professionals examining Coon, however, did not recommend an MRI until January 31, 2012. Docket 35-5. Therefore, Dr. Carpenter was not deliberately indifferent between the time his injury occurred and January 31, 2012. As far as Coon's objection applies to this time period, it is overruled.

Coon objects to Magistrate Judge Duffy's recommendation that Dr. Carpenter's decision to deny the February 9, 2012 MRI request did not constitute deliberate indifference. The fact that Dr. Carpenter provided Coon with medical treatment is not dispositive on the issue of deliberate indifference. " '[M]ere proof of medical care' is insufficient to disprove deliberate indifference.

16

Thus, in cases where some medical care is provided, a plaintiff 'is entitled to prove his case by establishing [the] course of treatment, or lack thereof, so deviated from professional standards that it amounted to deliberate indifference.' " *Allard*, 779 F.3d, at 772 (quoting *Smith*, 919 F.2d at 93).

By February 9, 2012, Coon had tried numerous different treatments without significant pain relief. He was x-rayed twice. Docket 40-1 at 9; Docket 35-4. His first x-ray on February 7, 2011, revealed "degenerative changes in the left knee consistent with arthritis." Docket 40-1 at 9. He took nonsteroidal anti-inflammatory drugs (NSAIDs) and did physical therapy exercises since at least July 2011. Docket 40-2 at 2. He tried knee sleeves, braces, and injections. Docket 40-1 at 6; Docket 35-5.

Coon presents evidence that these treatments were ineffectual. In September 2011, he complained that his pain was not fully relieved by NSAIDs. Docket 35-1.  He complained that his first knee injection "didn't last long," and that he was still in pain. Docket 40-2 at 4. He complained that the Lodine and knee sleeve did not help his pain. Docket 35-5.

Coon presents evidence of his knee problems beyond his own complaints. The x-ray showed degenerative changes. Docket 40-1 at 9. His nursing assessment on August 26, 2011 showed swelling and a slight deformity in the knee. Docket 40-1 at 7. There was also a lot of crepitus with movement of the knee. *Id.* And most importantly, CNP Manson agreed with Coon and requested that Dr. Carpenter authorize an MRI on January 31, 2012. Docket 35-5.

A reasonable jury could find that Dr. Carpenter was deliberately indifferent to Coon's serious medical needs by denying his MRI request on January 31, 2012 and liable for the harm he suffered after this point. Both parties cite to *Allard* in their filings and Magistrate Judge Duffy cited it extensively in her report and recommendation. Magistrate Judge Duffy explained *Allard* well in her report and recommendation, and the court will not explain it fully again. The difference between *Allard* and this case is instructive. In *Allard*, the court stated, "[T]he medical records are available and Allard has provided an expert who testified to the standard of care." *Allard*, 779 F.3d at 772. Here, no such expert testimony guides the court to determine whether Dr. Carpenter provided adequate medical care because the court has not authorized the hiring of an expert or expert discovery. While this case is very similar to *Allard*, this crucial information is missing. Therefore, Coon's claim for deliberate indifference survives summary judgment as it concerns the denial of his MRI request on January 31, 2012 and resulting harm.

Coon has an uncontested right to adequate medical care. *See Langford*, 614 F.3d at 459. The evidence he presented raises a fact question: whether Dr. Carpenter's treatment was grossly incompetent or inadequate rising to the level of deliberate indifference. Viewing the evidence in the light most favorable to Coon, a reasonable jury could find that the delay in approving Coon's MRI represented constitutionally inadequate medical care. *See Anderson*, 477 U.S. at 248; *Stuart C. Irby Co.*, 796 F.3d at 922. This is enough to defeat summary

18

judgment and allow for discovery, which Coon has been unable to fully perform to this point. The court finds that Dr. Carpenter is not entitled to qualified immunity for the period after February 9, 2012, when she denied the MRI request. As a result, Coon's objection is granted in part and denied in part, and Dr. Carpenter's objection is denied.

## III.   Motion to Appoint Counsel

Coon moves the court to appoint him counsel. Docket 45. Magistrate Judge Duffy recommends this court consider appointing counsel. There is no constitutional or statutory right to court-appointed counsel in a civil case. *Phillips v. Jasper County Jail*, 437 F.3d 791, 794 (8th Cir. 2006). The court in its discretion may appoint counsel to represent an indigent prisoner. *Id.* (citing 28 U.S.C. § 1915(e)). "The relevant criteria for determining whether counsel should be appointed include the factual complexity of the issues, the ability of the indigent person to investigate the facts, the existence of conflicting testimony, the ability of the indigent person to present the claims, and the complexity of the legal arguments." *Id.*

While Coon had the ability to represent himself adequately in the earlier stages of his case, the court doubts his ability to litigate this case after the denial of summary judgment, including making decisions regarding expert testimony and possibly presenting his case to a jury. The court grants Coon's motion to appoint counsel.

## IV.    Court Appointed Expert

Dr. Carpenter objects to Magistrate Judge Duffy's recommendation that the court appoint an expert. She argues it would not be an efficient use of judicial resources and "would amount to an exercise in futility." Docket 48 at 9-10. She also argues that it would be a "difficult task for any medical expert" to determine what affect the delay in surgery had on the outcome of the surgery. *Id.* at 10.

The court does not find these arguments persuasive. This order expands the window of possible liability to February 9, 2012 and any harm caused by Dr. Carpenter's denial to approve CNP Manson's MRI request. The difficulty of the determination is precisely why the court would appoint an expert. The court has appointed Coon counsel. The court authorizes Coon's counsel to hire an expert to assist him on this issue.

### CONCLUSION

Coon has presented evidence that Dr. Carpenter was deliberately indifferent to his serious medical needs by denying the February 9, 2012 MRI request. This raises a jury question whether Dr. Carpenter was deliberately indifferent to Coon's serious medical needs. Therefore, summary judgment is not appropriate for the time period after February 9, 2012. The court also grants Coon's motion to appoint counsel. It is ORDERED

1. Magistrate Judge Duffy's report and recommendation (Docket 46) is
   adopted in part and rejected in part as is consistent with this opinion.

20

2. Dr. Carpenter's motion for summary judgement (Docket 32) is denied. Coon's claim survives as it applies to Dr. Carpenter's alleged deliberate indifference after February 9, 2012.

3. Dr. Carpenter's objections (Docket 48) are denied.

4. Coon's objections (Docket 50) are granted in part and denied in part.

5. Coon's motion to appoint counsel (Docket 45) is granted. The court will appoint counsel by separate order.

Dated February 5, 2016.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

21